## CENTRAL OF GEORGIA RAILWAY CO. *v.* HALL.

.109  367
f114  761

1. It is within the discretion of the judge on the trial of a civil case to allow the jury to disperse at dinner and at night while the evidence is being submitted, and before they retire to make up their verdict, without the consent of the parties to the case, no motion being made contra, or cause shown for not allowing the separation.

2. In the trial of an action against a railroad company for injuries done to property at a public crossing which was half a mile from the depot where the train started, it was not error to give in charge to the jury "the crossing law" as contained in §§ 2222 and 2224 of the Civil Code.

3. The verdict, as written off under the order of the court, is not so excessive as to require a new trial.

Argued November 4, — Decided December 1, 1899.

Action for damages.    Before Judge Littlejohn.    Sumter superior court.    May term, 1899.

*J. B. Hudson* and *W. D. Kiddoo*, for plaintiff in error.
*L. J. Blalock*, *W. P. Willis*, and *J. A. Hixon*, contra.

SIMMONS, C. J.    At a point some half a mile below the depot in the city of Americus, Hall's team and wagon, which was loaded with one ton of guano, were run over by one of defendant's engines at a public crossing within the city limits. The wagon was destroyed, one of the mules rendered entirely useless for service, and the other so badly injured that he was of very little use thereafter.    The ton of guano was practically scattered to the winds, very little of it being saved.    The evidence is clear that the servants of the company did not observe the "crossing law" contained in §§ 2222 and 2224 of the Civil Code, so far as the checking of the speed of the train was concerned.    There is a conflict in the testimony as to whether

the bell was rung or not. Hall brought his action to recover damages for the injury which he alleged he sustained on account of the negligence of the servants of the railroad company. Upon the trial of the case, before the testimony was concluded, the judge allowed the jury to disperse for the purpose of procuring their dinners, and also at night to allow them to return to their homes. This was done, as the motion for new trial alleges, over the protest of counsel for the defendant at the dinner hour, and without his consent when they were allowed to disperse at night. The trial resulted in a verdict for $400 for the plaintiff; and a motion for a new trial was made, which was overruled, and the defendant excepted.

1. The motion complains that the judge allowed the jury to disperse, over the protest of counsel and without his consent. When this case was being argued on these two grounds, it was admitted that the protest mentioned in the motion for new trial was a private protest to the judge. This court has held that private communications between the judge and counsel are not matters that can be reviewed here. *Grant* v. *State*, 97 *Ga.* 790; *Stancell* v. *Kenan*, 33 *Ga.* 56. So we will consider the motion merely as if the jury were allowed to disperse without the consent of the counsel. This is not an open question in this court. As early as the case of *Stancell* v. *Kenan*, supra, decided August, 1861, this court held that it was a matter of discretion for the trial judge as to whether he would allow the jury to disperse or not during the trial of the case. In discussing this question, Jenkins, J., said: "Is it, then, erroneous in the court to permit a special jury, engaged in a protracted trial of a civil cause, to separate whenever the court takes a recess for necessary refreshment, no motion being made contra, or cause shown for not doing so? We think not. It is a matter of practice that may well be submitted to the sound discretion of the court, the usual caution being given to the jurors not to converse with any one touching the case during such separation." And this seems to be the practice in other jurisdictions. 2 Thompson on Trials, § 2548, and cases there cited; 12 Am. & Eng. Enc. L. (1st ed.) 374, and cases cited. It may be argued, however, that to make a motion to the court to keep the

jury in their room during the trial would prejudice counsel and his case before the jury. That, perhaps, is true, but counsel, if he desired to make such a motion, could request the court to have the jury retire, and then make it, and show his reasons for desiring the jury to be kept together. If the reasons were sufficient, no judge, in our opinion, would deny the motion. If he should refuse it, then it would be a subject-matter of review in this court; because it would have been made in open court and a decision pronounced thereon.

2. Under the facts disclosed by the record, there was no error in giving the law in relation to the duties of railroad companies in approaching public crossings. It was argued here that this law was inapplicable to the facts of the case, as the crossing was so near the starting-point of the train that it would be impossible to comply with the law. We understand from the record and the argument of counsel that this crossing where the injury was inflicted was some half a mile below the depot from which the train started. It was held in the case of *Harris* v. *Central Railroad,* 78 *Ga.* 526 (5), that the statute does not require that a train started at or upon a public crossing should be checked and kept checked while passing over that crossing. This was held for the reason that the train could never pass over the crossing if it was checked and kept checked. Where the crossing is a sufficient distance from the starting-point of the train to allow it to get under way, we think that the law is applicable, as was held in the case of the *E. T., Va. & Ga. Ry. Co.* v. *Markens,* 88 *Ga.* 60. We agree with the learned counsel that this law which requires trains to check and keep checking when approaching crossings is a hard one, and that it is impossible for the railroads of the country to transact the business of the country and obey it. It was passed about fifty years ago, before the people appreciated the necessity of rapid transit in travel and in freight. If the law were duly obeyed by the locomotive engineers, I am informed that it would take twelve hours, or more, to run a passenger-train from Atlanta to Macon, a distance of about one hundred miles. Still, it is the law of the land, and the courts must enforce it, however hardly it may work upon the business in-

terests of the country if it should be observed, or upon the railroads when they violate it. Where the servants of the railroad company fail to observe it and any person or property is injured upon the crossing, the company can make no defense except that the injury was done by the consent of the person injured; or that he could have avoided the injury by the observance of ordinary care; or that his negligence contributed to it, in the way of mitigation of damages. *A. & W. P. R. R. Co.* v. *Newton,* 85 *Ga.* 517. Two of these defenses were set up in this case: 1st, that the driver of the wagon could have prevented the injury by the exercise of ordinary care. 2d, by his own negligence he contributed to the accident. These matters were, doubtless, submitted to the jury under proper instructions from the court, and they must have found that the driver did observe proper care, and that no negligence of his contributed to the injury.

3. The jury found a verdict for $400. This was forty dollars more than the highest proved value of the property, including expenses in curing the mule, etc. The court directed this amount to be written off, which was done by the plaintiff. The amount thus written off left the amount of the verdict within the proved value of the property, including expenses, etc. The trial judge being satisfied with the verdict as written off, this court can not say that it is so excessive as to require a new trial.

*Judgment affirmed. All the Justices concurring.*