## CLIETT *v.* THE STATE.

No. 6671.   FEBRUARY 14, 1929.   REHEARING DENIED MARCH 2, 1929.

836

*R. D. Feagin* and *W. D. Aultman,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

BECK, P. J.   Without passing upon the question as to whether or not an oral motion to strike is the equivalent of a formal written general demurrer, we are of the opinion that the motion to strike the plea in this case should not have been sustained; for the court is of the opinion that the facts pleaded by the defendant constituted a good plea of former jeopardy.   We assume that the defendant was out on bond, and that his absence was voluntary; because it is to be inferred that if he was then confined in jail and his absence was enforced, that fact would have been pleaded.   Counsel for the defendant and the solicitor-general "agreed that a mistrial be declared," but before counsel for defendant "agreed," the court had already announced, referring to the finding of the jury, "This is not a verdict.   I will have to declare a mistrial."   We do not think that counsel in face of the fact could have done otherwise than agree to a mistrial; and his agreement should not be treated as a voluntary agreement that a mistrial be declared.   It was nothing more than an agreement to the court's pronounced opinion as to what was proper under the circumstances.   Of course, counsel

could have objected to a mistrial being declared, and the court in view of that objection might have ordered an officer to bring the jurors into court and might have reassembled the jury in the jury-box and then ordered the jury to retire to the jury-room and consider their verdict, and might have detained the jury until they had actually made a verdict. But in such an event, upon a motion for a new trial, the court would have been compelled to grant it. The whole trial after such dispersion of the jury would have been futile; and evidently the trial judge took this view of it. Neither the prisoner nor his counsel participated in the misconduct of the jury. The agreement of the defendant that the jury, "in event they made a verdict, should seal their verdict, hand it to the deputy in whose charge they were, and be allowed to disperse for the night, in the event a verdict was reached, and that the verdict thus reached and sealed should be returned to and read in open court the next morning," was not an agreement that the jury might disperse when they merely reached the conclusion that it was impossible for them to agree on a verdict. We do not think, under these circumstances, that it was incumbent on defendant or his counsel to insist that the jury should be reassembled and the trial carried forward until a verdict was reached. If defendant had done this, he could not afterwards have insisted that the verdict should be set aside because of the dispersion of the jury. Such an agreement on his part would have been a waiver of the flagrant misbehavior of the jury. Under our constitution and law, no person shall be put in jeopardy of life or liberty more than once for the same offense, save on motion for new trial after conviction, or in case of a mistrial. Penal Code, § 11.

In *Hopkins* v. *State*, 6 *Ga. App.* 403, it was said: "One who is accused of crime has a right to insist upon all of the formalities attached to a legal trial. Where, without his consent or over his objection, the jury charged with the determination of his guilt or innocence is dispersed prior to their return into court, a purported verdict, returned by one of the jury after they have separated as a whole and have been permitted to mingle with the public, and the defendant has thus been deprived of his right to poll the jury, is a nullity. . . In such a case as that above stated, the trial and the finding, being nugatory, amount to nothing more than a mistrial declared without the consent of the defendant and without

legal necessity; and for that reason the defendant can not be arraigned before a second jury." In *Nolan* v. *State,* 55 *Ga.* 521 (21 Am. R. 284), it was held: "When the accused is put on his trial for a capital offense, and the jury sworn and charged, if the indictment is not defective, he is in jeopardy of his life. . . Two reasons only are recognized by the law as justifying the discharge of the jury before they have agreed upon a verdict and legally returned it into court, to wit: the prisoner's consent, or necessity in some of its various forms, one of which is mistrial." We do not think that the improper and voluntary dispersion of the jury showed a case of necessity in the sense in which the word "necessity" was used in the decision last referred to. In *Oliveros* v. *State,* 120 *Ga.* 237 (47 S. E. 627, 1 Ann. Cas. 114), this court said: "Where in the trial of one accused of embezzlement a certain receipt signed by the accused, acknowledging the receipt of the money, was offered in evidence by the State and objected to by the accused, and the trial judge, in giving his reasons for admitting it, expressed his opinion as to the effect and weight of such a receipt as evidence, this did not authorize the judge of his own motion, over the protest of the accused, to declare a mistrial and discharge the jury. . . It was therefore error, when a mistrial had been so granted and the accused arraigned before a second jury, to overrule a plea of former jeopardy."

In *Madden* v. *Emmons,* 83 Ind. 331, where a party was put on trial upon a valid indictment before a jury, who had heard the evidence and were sent out to deliberate, and while out they discovered that one of their number was not a resident of the county, and thereupon, without the knowledge of the court, counsel, or defendant, they dispersed, and the court made no effort to reassemble them; it was held that this was putting in jeopardy, operated as an acquittal, and entitled the defendant to a discharge. See also *Hipple* v. State, 80 Tex. Cr. 531 (191 S. W. 1150).

Counsel for the State insists that the doctrine of waiver prevented the plaintiff in error from asserting any rights he might otherwise have had in the premises. As indicated by what is said above, we can not agree to the soundness of the contention that the consent of counsel under the circumstances in this case can operate to make legal and valid the order of the court declaring a mistrial. It follows from what we have said that the question propounded by the Court of Appeals must be answered in the negative.

HINES, J. dissenting. Under the constitution of this State, "No person shall be put in jeopardy of life, or liberty, more than once for the same offense, save on his or her own motion for a new trial after conviction, or in case of mistrial." Civil Code (1910), § 6364. After a mistrial has been properly declared, the defendant may be tried again. *Nolan* v. *State,* 55 *Ga.* 521 (supra) ; *Oliveros* v. *State,* 120 *Ga.* 237 (supra). To justify the grant of a mistrial without the consent of the accused, there must be either a moral or a physical necessity. Unless such necessity exists, a case is not brought within the exception to the general rule announced in the above provision of the constitution. If such necessity exists, and a mistrial is declared by the judge, with or without the consent of the accused, the latter can be tried again under the above constitutional provision. In this case there was such necessity. It is conceded in the opinion of the majority that the trial of the case, after the dispersion of the jury, would have been a mere farce. This being so, the court was not bound to reassemble the jury and proceed with a trial, which, according to the view of the majority, would have to be set aside. Courts are not required to do vain or foolish things.

But whether the mistrial was granted from necessity or not, the defendant can not take advantage of the grant of the mistrial, for the reason that he agreed to its grant. It appears from the record that counsel for the defendant and the solicitor-general "agreed that a mistrial be declared." It is a familiar principle of law that a defendant in a criminal case can not complain of any action taken by the court to which his attorney or himself agrees. The defendant expressly "agreed that a mistrial be declared." Having made such an agreement he can not complain that the mistrial was improperly granted. But it is urged that the court had previously stated that he would have to declare a mistrial; and that, in view of this statement of the court, the agreement of his counsel should not be treated as one agreeing to the grant of a mistrial. I do not think that this position is well taken. When the court stated that he would have to grant a mistrial, counsel for the accused could have kept silent or he could have objected to the grant of a mistrial. If he thought that an objection to the grant of a mistrial would be injurious to the cause of his client, he could have remained silent, and not have agreed to the grant of a mistrial. He could have remained mute, instead of expressly agreeing to the grant of

a mistrial. It seems unreasonable to hold that his agreement did not mean what its clear language implies, or that he was induced by coercion or duress, brought about by the statement of the judge, to enter into the agreement. Counsel for the defendant voluntarily agreed to the grant of a mistrial. He was authorized to take this course under the law, if he saw fit; and his agreement binds the defendant. The defendant, through his counsel, having agreed to the grant of a mistrial, can not now take advantage of the grant of a mistrial in order to set up former jeopardy as a bar to his trial under the indictment.

In my opinion the mistrial was legally declared from proper necessity, and for this reason the defendant could be tried again. In the second place, as the defendant expressly agreed to the grant of a mistrial, he can not now take advantage of the mistrial, so as to plead his former jeopardy in bar of his further prosecution. So I am constrained to dissent from the ruling of the majority.

On rehearing, GILBERT, J., concurs in the views expressed in the dissenting opinion of HINES, J.